PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

JEFFREY A. BACKHUS (CABN 200177)
Assistant United States Attorney

    60 South Market Street, Suite 1200
    San Jose, California 95113
    Telephone: (408) 535-5080
    FAX: (408) 535-5066
    jeffrey.backhus@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 19-00269 EJD |
| Plaintiff, | GOVERNMENT'S SENTENCING MEMORANDUM |
| v. | |
| JOSEPH SANSEVERINO, | Sentencing Date: March 31, 2025<br>Time: 1:30 p.m. |
| Defendant. | |

## I. INTRODUCTION

On January 11, 2019, Joseph Sanseverino was arrested after Santa Clara Police Department ("SCPD") officers observed him exiting a stolen Toyota truck. The officers announced their arrest while Sanseverino was walking from the truck to a house.

The announcement led to Sanseverino throwing a small gym bag under a nearby car. Officers retrieved the bag and found, among other things, a .38 Colt revolver, loaded with five rounds, and 232.2 grams of methamphetamine.

Because of the methamphetamine and firearm he possessed Sanseverino's total offense level after acceptance would have been 23. However, as Probation correctly points out, and as discussed in

more detail below, Sanseverino has at least two prior felony convictions of either a crime of violence or a controlled substance offense; therefore, he is a career offender. In particular, while they all do not count towards his criminal history score, Sanseverino has several convictions (January 5, 1999, March 31, 2004, February 2, 2011, and February 25, 2013) for felony violations of California Penal Code § 273.5 (Inflict Corporal Injury Spouse/Cohabitant).[1] As a result of some of these convictions, Sanseverino qualifies as a career offender under U.S.S.G. §4B1.1(b)(2). Therefore, Sanseverino's total offense level after acceptance is 31, and his Guidelines range is 188-235 months.

In the PSR, Probation recommends a significant downward variance to 120 months of imprisonment. In his sentencing memorandum, Sanseverino goes even further and recommends a sentence of time-served, which equates to approximately 69 months. The government believes that these sentences are too low given Sanseverino's conduct in this case, his criminal history and ongoing danger to the community. Accordingly, the government recommends a sentence of 188 months of imprisonment followed by a four-year period of supervised release on the terms recommended by Probation.

## II.  FACTS

On January 11, 2019, SCPD officers, who were assigned to the auto-theft task force, observed Sanseverino exiting a stolen Toyota truck. The officers announced their presence as Sanseverino was walking from the truck to a house. Sanseverino then attempted to conceal a backpack he was carrying by dropping it and kicking it under a nearby vehicle. Officers then handcuffed Sanseverino and took him into custody. At the time of the arrest, Sanseverino had three outstanding warrants for his arrest.

Upon searching Sanseverino's person, officers recovered, among other things, approximately $200 in U.S. currency in differing denominations.

Upon searching the backpack that Sanseverino attempted to discard, officers located a loaded .38 Colt revolver, approximately 232.2 grams of methamphetamine, a glass pipe, a smaller bag with a mixture of methamphetamine and marijuana (3.9 grams), and four syringes. During his first change of

---

[1] Probation cites his March 31, 2004 (Santa Clara County Superior Court Case No. FF405898) and February 2, 2011 (Santa Clara County Superior Case No. C1199073) as qualifying him as a career offender. PSR ¶ 18.

GOV'T SENTENCING MEM.                                2
CR 19-00269 EJD

plea, Sanseverino admitted that the firearm was possessed in furtherance of his methamphetamine trafficking operation. Dkt. 52.

## III.  DISCUSSION

### A.  Sentencing Guidelines

The government agrees with Probation's Guidelines calculations as follows:

| | |
|---|---|
| Base Offense Level, U.S.S.G. § 4B1.1(b)(2) | 34 |
| Acceptance of Responsibility, § 3E1.1 | -3 |
| Total Offense Level | 31 |
| Criminal History Category (0 points) | VI |
| Total Range (in months) | 188-235 months (60-month mandatory minimum) |

In his sentencing brief, Sanseverino disputes the above Guidelines calculations and argues that, under *Borden v United States*, 593 U.S. 420 (2021), and *United States v Gomez*, 115 F.4th 987 (9th Cir. 2024), Sanseverino is not a career offender pursuant to § 4B1.1(b)(2) because his prior convictions for felony domestic violence under California Penal Code Section 273.5 are not crimes of violence. The defendant is wrong.

### B.  Sanseverino is a career offender pursuant to U.S.S.G. § 4B1.1(b)(2)

Domestic violence is violent, and domestic violence felonies like California Penal Code § 273.5 are violent felonies. A defendant violates § 273.5 if he "willfully inflicts corporal injury resulting in a traumatic condition upon a victim." The Ninth Circuit has repeatedly held that the plain language of this statute precludes a conviction based upon reckless conduct. Nothing in *United States v. Gomez*--which interpreted a different California statute with different language and a different *mens rea*--undermines that precedent.

#### 1.  The Ninth Circuit Has Repeatedly Held that California Penal Code § 273.5 Is a Violent Felony

In *Borden*, the Supreme Court held that, under the elements clause of the ACCA, an offense is "a violent felony ... if it 'has as an element the use, attempted use, or threatened use of physical force

against the person of another.'" 593 U.S. at 423 (2021) (quoting 18 U.S.C. § 924(e)(2)(B)(i)). Before *Borden*, some circuits said "reckless conduct qualifie[d] as a violent felony." 593 U.S. at 425 & n.1. Others, including the Ninth Circuit, said "only a statute confined to purposeful or knowing conduct can count." *Id*. at 425 & n.2.

*Borden* settled the split. "Offenses with a *mens rea* of recklessness do not qualify as violent felonies under ACCA," since "[t]hey do not require, as ACCA does, the active employment of force against another person." *Borden*, 593 U.S. at 445. "The phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual." *Id*. at 429. And "[r]eckless conduct is not aimed in that prescribed manner." *Id*. The Ninth Circuit has long required a *mens rea* greater than recklessness. *See Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1130 (9th Cir. 2006) (en banc); *Borden*, 593 U.S. at 425 n.2. Applying *Fernandez-Ruiz*, the Ninth Circuit's pre-*Borden* caselaw uniformly held that California Penal Code § 273.5 was a violent felony. *See United States v. Walker*, 953 F.3d 577, 578-79 (9th Cir. 2020) (violent felonies under the ACCA); *United States v. Ayala-Nicanor*, 659 F.3d 744, 753 (9th Cir. 2011) (crimes of violence under USSG § 2L1.2); *United States v. Laurico-Yeno*, 590 F.3d 818, 821 (9th Cir. 2010) (same); *Banuelos-Ayon v. Holder*, 611 F.3d 1080, 1086 (9th Cir. 2010) (same under 18 U.S.C. § 16(a)). It also explicitly rejected claims that § 273.5 can be violated recklessly, instead finding § 273.5 to be a qualifying offense *because it cannot* be violated recklessly.

In *Laurico-Yeno*, for instance, the defendant "argue[d] § 273.5 applies to negligently or recklessly inflicted injuries, which do not qualify as a crime of violence." 590 F.3d at 822 n.4. That is, he said § 273.5 could be committed recklessly, and so was not qualifying. The Ninth Circuit disagreed, finding no support for the notion "that § 273.5 applies to negligent or reckless conduct." *Id*. To the contrary, it "requires the intentional use of physical force against the person of another." *Id.* at 823. "The plain terms of the statute require a person willfully to inflict upon another person a traumatic condition, where willfully is a synonym for intentionally." *Id.* at 821. 2

Similarly, in *Banuelos-Ayon*, the petitioner argued that § 273.5 does not "require the use of violent force." *Id.* at 1083-84. The Ninth Circuit rejected that claim because "California courts define the elements of § 273.5(a) as requiring the direct use of force against a person." *Id*. at 1085. It is not

enough that a defendant act with the "direct, natural and probable consequence" of force--he must "willfully inflict" injury upon another. *Id.* at 1084 (quoting *People v. Jackson*, 77 Cal. App. 4th 574, 580 (Ct. App. 2000)).

Since *Borden*, the Ninth Circuit has repeatedly concluded that these decisions remain good law in unpublished decisions. When applying *Borden* to § 273.5, one panel observed that "a person convicted of violating § 273.5 must 'willfully inflict a direct application of force on the victim,' 'where willfully is a synonym for intentionally.'" *United States v. Barrera*, 2022 WL 1239052, at *1 (9th Cir. Apr. 27, 2022). In so doing, "§ 273.5 requires that a defendant 'consciously deployed' force 'opposed to or directed at' the victim." *Id.* So "a violation of § 273.5 is a 'violent felony' under the ACCA." *Id.* Other panels agreed too: § 273.5(a) requires that defendants "willfully or intentionally 'inflict[] corporal injury,'" "consistent with *Borden*." *United States v. Culling*, 2024 WL 3023196, at *1 (9th Cir. June 17, 2024). "To inflict an injury willfully or intentionally upon a victim, a defendant must direct his action at or target the victim. Thus, § 273.5 requires more than reckless conduct." *Id.*; *United States v. Fernandez*, 2023 WL 3477838, at *1 (9th Cir. May 16, 2023) ("nothing in *Borden* upsets our prior precedent ... 273.5(a) is a crime of violence").

So too in a published decision--*Olea-Serefina v. Garland*, 34 F.4th 856 (9th Cir. 2022)-which found California Penal Code § 273d to be a qualifying offense. *Id.* at 865. Of course, § 273d is not § 273.5. But *Olea-Serefina* is still controlling with respect to § 273.5 for two reasons. First, § 273d has the same *mens rea* as § 273.5; it covers children rather than domestic partners, but the *mens rea* components are identical. *See* Cal. Penal Code § 273d(a) ("Any person who willfully inflicts upon a child ... an injury resulting in a traumatic condition is guilty of a felony"). Given the parallels, it is not possible to say § 273.5 and § 273d involve different mental states. If § 273d is a violent felony, so is § 273.5. *See People v. Thurston*, 71 Cal. App. 4th 1050, 1054 (1999) ("On all fours with spousal battery is section 273d ... It uses language virtually identical to that of section 273.5"); *Olea-Serefina*, 34 F.4th at 863 ("Olea contends, however, that [§ 273.5 and § 273d] differ in a way that renders our analysis in [§ 273.5] cases inapplicable to § 273d(a).. This argument fails.").

Second, *Olea-Serefina* adopted the Ninth Circuit's prior § 273.5 decisions. *See* 34 F.4th at 865 (explaining that the parallel statutory language "brings § 273d(a) squarely within our holding in

*Laurico-Yeno* that a crime that 'penalizes the intentional use of force that results in a traumatic condition' is categorically a crime of violence" (citing *Laurico-Yeno*, 590 F.3d at 822, and *Ayala-Nicanor*, 659 F.3d at 751, and *Banuelos-Ayon*, 611 F.3d at 1086)).  In so doing, *Olea-Serefina* depends upon the proposition--and therefore necessarily holds--that *Laurico-Yeno, Ayala-Nicanor*, and *Banuelos-Ayon* remain binding.  So § 273.5 is still a qualifying offense.

### 2.     California Caselaw Confirms that § 273.5 Cannot Be Committed Recklessly

California caselaw reaffirms the correctness of the Ninth Circuit's prior decisions.  The mental implications of § 273.5 have been detailed in decisions holding that § 273.5 is an offense involving moral turpitude under state law.  *See People v. Burton*, 243 Cal. App. 4th 129 (Ct. App. 2015); *Donley v. Davi*, 180 Cal. App. 4th 447 (Ct. App. 2009).  Notably: "a readiness to do evil" is present in a section 273.5 violation because the offense is defined by a willful infliction of injury upon, ... "[a] victim [who] may reasonably expect, stability and safety, and in which the victim, for these reasons among others, may be especially vulnerable."  It is the assailant's awareness of this special relationship and willful abuse of such relationship using violence that demonstrates moral turpitude.  *Donley*, 180 Cal. App. 4th at 459 (emphasis added, citation omitted).  A "readiness to do evil," "awareness of," and "willful abuse ... by the use of violence" are not consistent with simple recklessness.  *See People v. Lepolo*, 55 Cal. App. 4th 85, 90 (1997) (moral turpitude involves "acts 'attended by knowledge of [the] circumstances and a conscious decision to exploit them sufficient to signify a readiness to do evil'").

Further, the baseline requirement for assault and battery offenses (separate from the willful infliction of injury requirement of § 273.5) is that a defendant both (1) commit an intentional act and (2) "actually know[] those facts sufficient to establish that his act by its nature will probably and directly result in physical force being applied to another."  *People v. Williams*, 26 Cal. 4th 779, 787-88 (2001) (emphasis added).  As the California Supreme Court explained, the phrase "by its nature will probably and directly result" requires "a greater mental state" than "mere recklessness."  *People v. Atkins*, 25 Cal. 4th 76, 88-89 (2001).

Even if *Gomez* held otherwise, however, "a conviction under § 273.5(a) requires more than a simple battery."  *Banuelos-Ayon*, 611 F.3d at 1084.  Most California assault and battery statutes--such as California Penal Code § 245(a)--"extend criminal liability to the direct, natural and probable

consequences of" a defendant's actions. *Jackson*, 77 Cal. App. at 580. In other words, the defendant is guilty of assault or battery if he takes an action that naturally and probably will result in injury. *Id*. at 579-80. By contrast, "the Legislature intended Section 273.5 to define a very particular battery." *Id*. at 580. "[T]he section is not violated unless the corporal injury results from a direct application of force on the victim by the defendant." *Id*.

### 3.   *Gomez* Did Not Overrule Ninth Circuit Precedent on § 273.5

*Gomez* held that California Penal Code § 245(a) is not a violent felony. Without getting into the issue of whether the government agrees with the holding in *Gomez*, *Gomez*'s discussion of § 245 does not affect § 273.5.

To start, *Gomez* does not speak to the *mens rea* of § 273.5 because § 245 uses different language for its intent. Unlike § 245, "[t]he plain terms of [§ 273.5] require a person willfully to inflict upon another person a traumatic condition, where willfully is a synonym for intentionally." *Laurico-Yeno*, 590 F.3d at 821. And because the defendant must "willfully inflict" injury, "the elements of California Penal Code § 273.5(a) differ from" other types of California assault and battery. *Banuelos-Ayon*, 611 F.3d at 1084.

The reasoning of *Gomez* also does not apply to § 273.5. In *Gomez*, the Ninth Circuit held that § 245(a) purportedly can be committed recklessly because "a 'defendant who honestly believes that his act was not likely to result in a battery is still guilty of assault if a reasonable person, viewing the facts known to defendant, would find that the act would directly, naturally, and probably result in a battery.'" 115 F.4th at 995 (*quoting Williams*, 26 Cal. 4th at 788). As explained above, however, the Ninth Circuit has recognized that this natural-and-probable consequences test does not apply to § 273.5. *Banuelos-Ayon*, 611 F.3d at 1084.

*Gomez* further did not analyze any of the Ninth Circuit's precedent regarding § 273.5. It criticized its own § 245 caselaw in particular, saying that, "our subsequent cases analyzing § 245(a)(1) did not use a definition of recklessness consistent with *Borden*'s." 115 F.4th at 996. And it parsed the facts of several California Court of Appeal cases on § 245(a)(1), not § 273.5.

In fact, *Gomez* expressly stated that decisions regarding other types of assault and battery were "largely inapplicable because Gomez was convicted under § 245(a)(1)." 115 F.4th at 996 n.4. *Gomez*

thus did not call into question the Ninth Circuit's caselaw on § 273.5, which applied *Fernandez-Ruiz* and the no-recklessness rule that was eventually adopted by *Borden*. Moreover, the Ninth Circuit precedent on § 273.5 can be easily reconciled with *Gomez* because *Gomez* analyzed a statute with different language and a different *mens rea*.

### C. A 188-Month Sentence is the Reasonable and Appropriate Sentence in this Case

The government respectfully requests that the Court impose low-end Guidelines sentence of 188 months of imprisonment. This sentence is supported by the § 3553(a) factors: In particular, the history and characteristics of the defendant, promoting respect for the law, the seriousness of the offense, deterring future criminal conduct, and protecting the public.

The circumstances of the instant offense, as well as Sanseverino's history and characteristics are extremely aggravating. In this case, Sanseverino possessed the firearm and a significant quantity of methamphetamine on his person at the time of his arrest. The possession of weapons in addition to the drugs is extremely troubling. During this offense, Sanseverino was acutely aware that his conduct was both illegal and dangerous but chose to do it anyway, heedless of the consequences of possessing and distributing narcotics and possessing firearms in contravention of laws put in place to save lives and stop drug dealers from amassing deadly weapons.

In fact, Sanseverino's criminal history makes his possession of a firearm even more troubling. As stated above, Sanseverino has several convictions (January 5, 1999, March 31, 2004, February 2, 2011, February 25, 2013) for felony violations of California Penal Code § 273.5 (Inflict Corporal Injury Spouse/Cohabitant). Although the PSR only contains facts relating to the March 31, 2004 indecent, the Court can see that those facts are extremely violent and disturbing. PSR at ¶ 28. Among other thing, Sanseverino struck his victim in the arm with a metal broom handle and threatened to "crush her skull." *Id*. Sanseverino also has a history of violating domestic violence protective orders. PSR at ¶¶ 30,35. As this Court is aware, violence against partners and family members is a crisis, and this violence is often perpetrated with a firearm. Sanseverino's access to firearms and violent criminal history surely makes him a danger to the community.

Moreover, as evidenced by the methamphetamine, currency and indicia of sales recovered during the January 11, 2019 arrest, the government believes that Sanseverino was supporting himself through

drug trafficking and is likely responsible for putting large quantities of drugs into the community. Clearly, Sanseverino had turned to drug trafficking to make a living since he, "has never held sustainable employment." PSR ¶ 63. As Sanseverino says himself, "You get it to sell it. To use it." PSR ¶ 59.

At the same time, the government recognizes Sanseverino's difficult childhood, mental health challenges, substance abuse history and efforts at rehabilitation while in custody. However, any mitigation is overcome by Sanseverino's extensive criminal background, the nature of the instant offenses and the danger he poses to the community. This Court will need to decide whether it believes that Sanseverino has truly "turned [his] life upside down" (PSR ¶ 10) or whether his demonstrated violent history of abusing his partners shows he is a danger to the community. His criminal history suggests that the only reason Sanseverino hasn't committed new crimes in recent years is that he has been in custody. Sanseverino has been committing crimes almost nonstop since he was a teenager. He was first involved in the criminal justice system at the age of fourteen and has fifteen prior convictions.

Lastly, the 69-month sentence recommended by the defense is simply not sufficient given Sanseverino's history. He has already been sentenced to lengthy terms of imprisonment, but these sentences have not deterred his criminal conduct, and he has continued to commit crimes while not in custody. Sanseverino received 4 years in prison for his 2004 domestic violence conviction and 5 years for his 2013 domestic violence conviction. A step up in punishment is needed to deter Sanseverino from committing new offenses and to protect the public.

## IV.   CONCLUSION

Given Sanseverino's actions in this case, the government believes that a 188-month sentence is appropriate. It reflects the seriousness of defendant's conduct, his criminal history, and the need to protect the public. It will also provide, the government hopes, a level of specific deterrence for the

///
///
///
///
///

defendant that his previous sentences have not. Accordingly, the government recommends a sentence of 188 months of imprisonment followed by a four-year period of supervised release on the terms recommended by Probation.

DATED: March 26, 2025               Respectfully submitted,

                                    PATRICK D. ROBBINS
                                    Acting United States Attorney


                                    _____/s/_____
                                    JEFFREY A. BACKHUS
                                    Assistant United States Attorney